Jerry David CONNER, Appellant,

v.

Martha L. BEAN, Appellee.

No. 18052.

Court of Appeals of Texas,
Houston (1st Dist.).

Dec. 31, 1981.

Rehearing Denied April 8, 1982.

T. Turner Pope, Conner & Dreyer, Jerry Conner, Houston, for appellant.

Weeks, Chapman & Buford, J. Winton Chapman, Jr., Austin, for appellee.

Before EVANS, C. J., and DOYLE and STILLEY, JJ.

STILLEY, Justice.

This suit is for breach and anticipatory breach of a contractual alimony agreement incorporated into a final judgment of divorce between the parties. The case was submitted to the jury on special issues. The jury awarded damages for breach and anticipatory breach, and attorney's fees.

Appellant, Jerry Conner, and appellee, Martha Bean, were married in 1964. Evidence adduced at the trial showed appellant to be an experienced attorney regarding family law matters, who drafted the property settlement agreement and judgment that became the subject matter of this suit. Appellant filed for divorce prior to February, 1975. On February 24, 1975, the parties announced that they had reached agreement on the contested issues, including appellant's agreement to pay contractual alimony of $28,175 in fixed amounts for 121 months. Subsequently, on July 16, 1975, appellant executed a "contractual alimony agreement" incorporating the above terms. Thereafter, a "Final Judgment" granting the divorce, dividing the community estate, and incorporating the agreement, was signed by the court. Appellant commenced making the periodic payments stipulated in the judgment and continued to do so until August, 1976. Appellant ceased making payments for the reason that appellee had remarried.

By his first point, appellant alleges error by the trial court in refusing submission of an issue inquiring whether appellant breached the terms of the contractual alimony agreement.

Appellant's special issue "D" inquires: "Do you find from a preponderance of the evidence that the refusal by Jerry David Conner to pay contractual alimony to Martha Lloyd Bean, after her marriage to Mr. Bean, was a breach of the document identified as plaintiffs exhibit No. 5 and exhibit No. 1. Answer 'We do' or 'We do not.' "

Appellant argues that because his defensive theory of full performance was a controlling issue, raised by his pleadings and supported by the evidence, the issue of breach was an issue to be decided by the jury, pursuant to Rules 277 and 279 of the Texas Rules of Civil Procedure.

Appellee replies that the "Contractual Alimony Agreement," as incorporated in the "Final Judgment" of divorce, is unambiguous, as found by the trial court in the instant case. Appellee further argues that no conditions subsequent appear in the agreement effecting a termination on appellee's remarriage and that the agreement should be construed most strongly against appellant as drafter of the agreement. In addition, appellee argues that appellant is precluded from raising contractual defenses to the agreement, such as full performance, as the agreement is incorporated into the final judgment of divorce, that to do so would constitute a collateral attack on a judgment, citing, *Peddicord v. Peddicord*, 522 S.W.2d 266 (Tex.Civ.App.—Beaumont 1975, writ ref'd n. r. e.).

Appellant affirmatively pled no consideration, no acceptance of his offer, and termination upon appellee's remarriage. As to the first two defenses, they are barred as collateral attacks on the final judgment of divorce as they attack the validity of the agreement at its inception. The third defense of condition subsequent (appellee's remarriage) is grounded on events subsequent to the execution and approval of the judgment of divorce and is

therefore a proper defense. *Sorrels v. Sorrels*, 592 S.W.2d 692 (Tex.Civ.App.—Amarillo 1979, writ ref'd n. r. e.).

Notwithstanding the foregoing, no error was committed by the trial court in refusing to submit appellant's special issue "D" because the issue as phrased required the jury to determine a question of law. The question of whether specific conduct constitutes a "breach of contract" requires a determination of the legal effect of appellant's actions and is an issue of law for determination by the trial court. *Knutson v. Ripson*, 163 Tex. 312, 354 S.W.2d 575 (1962). Appellant's first point is overruled.

In the second point of error, appellant complains of the refusal of the trial court to submit a special issue regarding the intention of appellant to terminate any alimony obligation upon the remarriage of appellee. Point three relates to the refusal to submit appellant's definition of contractual alimony. Points four, five, and six complain of the trial court's refusal to allow exhibits and testimony offered to illustrate appellant's intention that the alimony agreement terminate on appellee's remarriage.

Appellant argues that the term "alimony" has a conditional limitation inherent in it as it is used by the legal profession in Harris County, and as intended by appellant when he drafted the "Contractual Alimony Agreement" and the "Final Judgment" which incorporates the agreement. Further, appellant argues that where the language of a written contract becomes uncertain when an attempt is made to apply it to the subject matter of the contract, parol evidence is admissible in making the application, citing, *Murphy v. Dilworth*, 137 Tex. 32, 151 S.W.2d 1004 (1941). Also, appellant asserts that it is the duty of the court to ascertain the intention of the parties to the contract as disclosed by its provisions and surrounding circumstances.

Appellant's requested definition of contractual alimony included an interpretation of the term to mean that payments would terminate upon remarriage to another person. Appellant cites no authority but argues that the statutes of sister states support such an interpretation, and offered testimony at trial concerning his definition.

We note that a number of states by case law have expressly taken the view that remarriage of the wife does not automatically or *ipso facto* terminate the former husband's obligation to pay alimony. 48 A.L.R.2d 270, 279 (1956) *Alimony-Effect of Remarriage.* Further, where it may be shown that the settlement of a fixed sum is in lieu of property rights of the wife, her remarriage will not affect the wife's rights under the settlement. *Id.* at 302.

In the case at bar the final judgment awards specified real and personal property to appellant, and approves the contractual alimony agreement awarding appellee, over a period of 121 months, payments totalling $28,175.00.

As in the case of *Miller v. Miller*, 463 S.W.2d 477 (Tex.Civ.App.—Tyler 1971, writ ref'd n. r. e.), the payments imposed in the instant case are not expressly referable to any property owned by the parties. Payments under a contractual alimony agreement approved by the court need not necessarily be referable to be a part of appellee's settlement of property rights. The courts in Texas are vested with wide discretion in the division of property in suit for divorce and may divide the property in such a way as the court deems right, just and proper. *Roye v. Roye*, 404 S.W.2d 92, 96 (Tex.Civ. App.—Tyler 1966, no writ); *Dobbs v. Dobbs*, 449 S.W.2d 119 (Tex.Civ.App.—Tyler 1969, no writ); *Hearn v. Hearn*, 449 S.W.2d 141, 144, 145 (Tex.Civ.App.—Tyler 1969, no writ).

As stated in *Miller*: "The trial court, in dividing the property in divorce suit, may take into consideration a number of things including the difference in earning power, capacity and abilities, probable future need for support, fault in breaking up the marriage, and the benefits the innocent spouse would have received from a continuation of the marriage. *Roye v. Roye*, supra; *Pickitt v. Pickitt*, 401 S.W.2d 846 (Tex.Civ.App.—Tyler 1966, no writ). We are of the opinion that a husband and

wife in contemplation of a divorce may and should consider, as the court may, the conditions and circumstances of each other in executing a property settlement agreement." *Miller v. Miller*, 463 S.W.2d at 480.

In *Murphy v. Dilworth, supra,* the Supreme Court stated that if the meaning of language used in a written contract becomes uncertain, parol evidence is admissible to assist the court. However, it is further stated "[t]his does not mean that parties may prove the making of an agreement different from that expressed in the written contract." *Murphy v. Dilworth,* 151 S.W.2d at 1005. Further, in the absence of fraud, accident or mistake, it would be immaterial that the parties later thought a different contract was intended.

Appellant's arguments further overlook the fact that the determination of whether an ambiguity exists is a question of law for the court to decide prior to admitting testimony before the jury as to the intentions of the parties in the drafting and executing of the contract. *R&P Enterprises v. LaGuarta Gavrel & Kirk, Inc.,* 596 S.W.2d 517 (Tex. 1980). The trial court, by implication, determined that no ambiguity existed by the use of the terms "contractual alimony" in the property settlement agreement incorporated into the divorce judgment. Points of error two through six are overruled.

■ Appellant cites no authority for his seventh point of error that the trial court erred in not conditioning a damage issue on an issue of fault, that it was not an ultimate issue, and had no accompanying instructions. The issue inquired how much money was past due on the agreement. In addition to being multifarious, the objections on appeal do not conform to appellant's objections to the special issue made at trial. The error, if any, is therefore waived. *Wilson v. City of Port Lavaca,* 407 S.W.2d 325 (Tex.Civ.App.—Corpus Christi 1966, writ ref'd n. r. e.).

By points of error eight and nine, appellant objects to inclusion in the court's charge of special issue 1(B), that inquires into the amount of money due for anticipatory breach of the contract, for lack of any affirmative pleadings. Appellant objects also to the definition of "anticipatory breach" for the same reason. Appellant further argues that the definition was legally incorrect for using the word "may" instead of "must", which thereby relieved appellee of her burden of proof and constituted a comment on the weight of the evidence.

The court's definition of "anticipatory breach" was: "A breach of contract before there is a present duty of performance and *may* result from words or actions evidencing intent to refuse performance in the future." (Emphasis added).

Plaintiff's First Amended Original Petition states, in relevant part:

### III.

"Pursuant to the Contract, the Defendant has paid to the Plaintiff a total sum of $4,675.00 . . . The principal balance remaining due and unpaid is $23,500.00.

### IV.

". . . Plaintiff has made several demands upon the Defendant to continue his payments and/or pay the total remaining balance. The defendant has refused to do so and has stated his intention to never make any further payments.

### V.

". . . Plaintiff believes that she is entitled to recover, in addition to the unpaid principal balance of the indebtedness . . .

### VI.

". . . Plaintiff asks that she be awarded judgment against the Defendant for the unpaid principal indebtedness . . .

### VIII.

". . . Plaintiff believes she is entitled to recover all sums now remaining unpaid on the Agreement and hereby sues to collect on that judgment.

"Wherefore, Premises Considered, Plaintiff requests that she be awarded Judgment for her actual damages..."

■ The pleading of anticipatory breach is sufficient. It clearly alleges a failure to make payments, alleges appellant's intention to not make future payments, and demands the principal balance remaining to be paid of $23,500. Compare, *Norsworthy v. American Lease Plan*, 447 S.W.2d 768, 770 (Tex.Civ.App.—Houston [14th Dist.] 1969, no writ).

■ Regarding appellant's allegation that the definition of "anticipatory breach" was incorrect for failing to state such a breach *must* result from words or actions evidencing intent to refuse performance in the future, appellant cites *Preston v. Love*, 240 S.W.2d 486 (Tex.Civ.App.—Austin 1951, no writ), and *Continental Casualty Company v. Boerger*, 389 S.W.2d 566 (Tex.Civ.App. —Waco 1965, writ dism'd), as correctly illustrating the proper definition of anticipatory breach.

Appellant misinterprets the import of *Preston* and *Boerger.* The thrust of these cases is that "... the declaration of intent to abandon must be made in positive and unconditional terms." *Preston v. Love,* supra, "(i)t is conduct which shows a fixed intention to abandon, renounce and refuse to perform the contract." *Continental Casualty Company v. Boerger,* supra. To adopt appellant's mandatory term "must" rather than the volitional term "may" in a charge defining "anticipatory breach" would limit the jury's consideration of the proof of the breach to either words or conduct evidencing intent to refuse future performance, but not both. This would be an incorrect definition of "anticipatory breach."

Appellant's points of error eight and nine are overruled.

Appellant in his tenth and eleventh points submits that error was committed in submitting the issue and instructions for anticipatory breach as unsupported by the pleadings or evidence and for stating an improper measure of damages. Specifically, appellant argues that special issue 1 (B)

should have instructed the jury to "find the present value if now paid" of the sum of money owed for anticipatory breach. Also, appellant alleges the inclusion of allowance for any incidental damages in the instructions for anticipatory breach was incorrect.

■ While the inclusion of the phrase "together with any incidental damages" was improper in the instructions for anticipatory breach, *Lee v. Lee*, 509 S.W.2d 922 (Tex.Civ.App.—Beaumont 1974, writ ref'd n.r.e.), no harm is demonstrated.

...[N]o judgment shall be reversed on appeal ... on the ground that the trial court committed an error of law ... unless ... the error complained of amounted to such a denial of the rights of the appellant as was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case ...

Tex.R.Civ.P. 434.

Appellant had already paid $4,675.00 to appellee. The jury awarded $14,575.00 for installments past due under the alimony agreement and $8,925.00 for anticipatory breach. These sums total $28,175.00—the same amount appellant obligated himself to pay under the alimony agreement.

Regarding the failure to charge the jury to find the present value of the future installments if then paid in cash, appellee at oral submission of this case admitted error and offered a remittitur of $1,475.87.

Likewise, appellee admits, in response to point 12, that prejudgment interest should have been calculated at the rate of six percent (6%) per annum instead of nine percent (9%), and offers remittitur of $983.48.

■ By his final point of error, appellant alleges error by the trial court in awarding attorney's fees as the suit by appellee was a suit to collect on a judgment for which there is no substantive law permitting such an award. Further, appellant argues that the trial court erred in overruling appellant's motion to require an election of remedies in order to determine on what theory appellee prevailed in order to deter-

mine whether appellee is entitled to attorney's fees. These arguments are overruled.

 A suit to enforce the terms of a contractual alimony agreement incorporated into final judgment of divorce sounds in the law of contracts and "... [t]he agreement will then have whatever legal force the law of contracts will give it. See, *Ex Parte Jones*, 163 Tex. 513, 358 S.W.2d 370 (1962)." *Francis v. Francis*, 412 S.W.2d 29, 33 (Tex.1967). See also, *Brophy v. Brophy*, 599 S.W.2d 345 (Tex.Civ.App.—Texarkana 1980, no writ). Therefore, pursuant to Tex. Rev.Civ.Stat.Ann. art. 2226 (Vernon Supp. 1980–1981), appellee is entitled to reasonable attorney's fees. No challenge is made to the reasonableness of the fees awarded by the trial court.

Appellant's thirteenth ground of error is overruled.

Judgment of the trial court is modified pursuant to points eleven and twelve and as modified, affirmed.